**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION | MDL No. 2641 |
| This Order Relates to: | |
| Ronald Wolfe, | No. CV-16-00786-PHX-DGC |
| Plaintiff, | |
| v. | **ORDER** |
| C.R. Bard, Inc., et al., | |
| Defendants. | |

This case was originally filed in Ohio state court, and Defendants removed it to federal court.  After removal but before consolidation in this MDL, Defendants filed a motion to sever and remand the claims against Defendant Lawrence Schmetterer, M.D.  *See* Docs. 4, 5 in *Wolfe v. C.R. Bard, Inc.*, No. 2:16-cv-00786-DGC (N.D. Ohio Mar. 11, 2016).[1]  Plaintiff responded.  *See* N.D. Ohio Doc. 8.  Plaintiff also filed a motion to remand (N.D. Ohio Doc. 7), which Defendants opposed (Doc. 1323).  No party has requested oral argument, and argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).  For the following reasons, the Court will grant the motion to remand.

---

[1] To avoid confusion, documents filed in the Northern District of Ohio case after removal but before consolidation in this MDL will be cited as "N.D. Ohio Doc.," and documents filed in MDL No. 2641 will be cited as "Doc."

1   **I.     Background.**

2          The allegations of Plaintiff's complaint are taken as true for purposes of this

3   motion.   Plaintiff Ronald Wolfe is a resident of Ohio.   N.D. Ohio Doc. 1-2 at 5.

4   Defendant C.R. Bard, Inc. is a corporation organized under the laws of Delaware with its

5   principal place of business in New Jersey.  *Id.* at 7-8, ¶ 9.  Defendant Bard Peripheral

6   Vascular, Inc. is a wholly-owned subsidiary of C.R. Bard, Inc. with a principal place of

7   business in Arizona.  *Id.* at 8, ¶ 10.  Defendant Lawrence Schmetterer, M.D. is a licensed

8   physician who specializes in vascular surgery and resides in Ohio.  *Id.* at 9, ¶ 12.

9          On or about March 30, 2012, Plaintiff had a Bard Eclipse Filter implanted in his

10  inferior vena cava by Dr. Schmetterer in Youngstown, Ohio.  *Id.* at 7, ¶ 8.  The Eclipse

11  Filter subsequently failed – it migrated out of position, tilted off center, penetrated the

12  inferior vena cava, failed to protect against pulmonary emboli, and caused blood clots to

13  develop.  *Id.*  The Eclipse Filter cannot be removed.  *Id.*  As a result, on or about

14  March 24, 2015, Plaintiff had a Bard Meridian Filter implanted above the Eclipse Filter.

15  *Id.*  The Meridian Filter has failed in a manner similar to the Eclipse Filter.  *Id.*

16         On February 1, 2016, Plaintiff filed this action against Defendants C.R. Bard, Inc.,

17  Bard Peripheral Vascular, Inc., and Dr. Lawrence Schmetterer in Ohio's Mahoning

18  County Court of Common Pleas.  *See id.* at 5.  On March 9, 2016, C.R. Bard, Inc. and

19  Bard Peripheral Vascular, Inc. (collectively "Bard") removed the case to federal court in

20  the Northern District of Ohio.  *See* N.D. Ohio Doc. 1 at 1-10.  On March 11, 2016, Bard

21  moved for an order severing the claims against it from the claims against Dr.

22  Schmetterer, and remanding the claims against Dr. Schmetterer to Ohio state court.[2]  *See*

23  N.D. Ohio Docs. 4-5.   On March 18, 2016, Plaintiff filed a motion to remand the

24  proceedings to Ohio state court.  *See* N.D. Ohio Doc. 7.  On March 21, 2016, the United

25  States Judicial Panel on Multidistrict Litigation transferred the case for inclusion in this

26  MDL.  *See* Doc. 1156.

27  _____

28         [2] Bard also requested a stay pending the resolution of its request for inclusion of
    this case in MDL No. 2641.  *See* N.D. Ohio Doc. 5 at 9-14.  This issue is now moot.

## II.     Legal Standard.

A civil case brought in state court may be removed to the federal court in the district where the action is pending if the federal district court would have had original jurisdiction.  28 U.S.C. § 1441(a).  Removal based on diversity jurisdiction is not proper if diversity is lacking or "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," 28 U.S.C. § 1441(b)(2), but the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds," *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citations omitted).[3]  Section 1441 is to be strictly construed against removal. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).  A defendant seeking to remove a case to federal court carries the burden of establishing diversity jurisdiction, and "[a]ll doubts as to the propriety of removal are resolved in favor of remand."  *Coyne*, 183 F.3d at 493 (citation omitted); *see* 28 U.S.C. § 1447(c).

## III.    Analysis.

### A.     Plaintiff's Motion to Remand.

Plaintiff argues that remand to Ohio state court is appropriate because: (1) there is no diversity of citizenship on the face of the complaint; (2) the Sixth Circuit has not adopted fraudulent misjoinder, and, even if it did adopt the doctrine, this would not be an appropriate case to apply it; and (3) public policy weighs in favor of remand.  The Court will consider Plaintiff's fraudulent misjoinder arguments first.

#### 1.     Fraudulent Joinder.

The doctrine of fraudulent joinder provides a helpful reference point for understanding the doctrine of fraudulent misjoinder.[4]  It is well-settled that "[f]ederal

---

[3] Because an MDL transferee court applies the substantive law of the transferor forum, the Court applies the fraudulent misjoinder law of the Northern District of Ohio. *In re Zicam Cold Remedy Mktg., Sales Practices, & Prods. Liab. Litig.*, 797 F. Supp. 2d 940, 941 (D. Ariz. 2011) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 525 (1990)).

[4] In its broadest sense, the term "fraudulent joinder" encompasses three related but distinct concepts: (1) fraudulent joinder, (2) fraudulent misjoinder, and (3) outright fraud

courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals." *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906).  Fraudulent joinder and fraudulent misjoinder have been developed to carry out this mandate.

In the Sixth Circuit, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne*, 183 F.3d at 493 (citations omitted).  "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* (citation omitted).  Remand is appropriate, however, "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants." *Id.*  All ambiguities in the controlling state law and all doubts about the propriety of removal are resolved in favor of remand.  *Id.* (citation omitted).  A party's motive for joining the non-diverse defendant is immaterial.  *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (citation omitted).  "When deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (citation omitted).[5]

## 2.    Fraudulent Misjoinder.

The doctrine of fraudulent misjoinder, or procedural misjoinder, was first recognized by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  In that case, an Alabama resident filed a class action lawsuit in Alabama state court against four defendants, one of which resided in Alabama.  The

---

by the plaintiff in setting out factual allegations to establish or thwart jurisdiction.  *See* 14B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3723 (4th ed. 2015).  Because there have been no allegations of outright fraud in this case, the third concept is not relevant.  Thus, to distinguish it from fraudulent misjoinder, the term "fraudulent joinder" will refer only to the narrower concept, and not the umbrella term.

[5] Courts in other circuits have defined this more-lenient version of the Rule 12(b)(6) test by reference to Rule 11 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Davis v. Prentiss Props. Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114-16 (C.D. Cal. 1999).

statutory and common law fraud claims in the original complaint and the first amended complaint involved only the sale of service contracts in connection with automobile sales. *Id.* at 1355. The second amended complaint added parties as well as statutory and common law fraud claims relating to extended service contracts in the sale of retail goods by Lowe's, a resident of North Carolina. *Id.* Lowe's filed a notice of removal based on diversity jurisdiction and a motion to sever the retail goods class from the automobile class. *Id.* The federal district court granted the motion to sever and remanded the automobile class to Alabama state court. *Id.* Plaintiffs appealed. *Id.* at 1355-56.

The Eleventh Circuit affirmed. *Id.* at 1360. The court noted that Lowe's had been joined solely through Rule 20 of the Federal Rules of Civil Procedure, which requires: "(1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact." *Id.* (citing Fed. R. Civ. P. 20(a)). The court found no allegations of joint liability or any allegation of a conspiracy between the defendants; instead, the court found two sets of claims that were wholly distinct from one another. *Id.* The court concluded that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* The court concluded that there was "no real connection" between the automobile class and the retail goods class. *Id.* The court held that "the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder." *Id.* The court qualified that "mere misjoinder" does not constitute fraudulent misjoinder; instead, it requires conduct that is "so egregious as to constitute fraudulent joinder." *Id.*

*Tapscott* has not been widely followed. Three circuits have declined to adopt the doctrine when presented with the opportunity. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) ("The Eighth Circuit Court of Appeals has not yet considered the fraudulent misjoinder doctrine. We make no judgment on the propriety of the doctrine in this case, and decline to either adopt or reject it at this time.") (citation omitted); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010)

1    (unpublished) ("There may be many good reasons to adopt procedural misjoinder . . . .
2    But we need not decide that issue today, because the record before us does not show that
3    adopting the doctrine would change the result in this case."); *Cal. Dump Truck Owners*
4    *Ass'n v. Cummins Engine Co., Inc.*, 24 F. App'x 727, 729 (9th Cir. 2001) (unpublished)
5    ("The Eleventh Circuit has recognized the additional theory of egregious misjoinder,
6    where the claims of non-diverse plaintiffs have no real connection or nexus to the claims
7    of the diverse plaintiffs.  For purposes of discussion we will assume, without deciding,
8    that this circuit would accept the doctrines of fraudulent and egregious joinder as applied
9    to plaintiffs.") (citing *Tapscott*, 77 F.3d 1353).  The Fifth Circuit has cited *Tapscott* with
10   approval, while stopping short of fully adopting fraudulent misjoinder.  *See In re*
11   *Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) ("Thus, without detracting
12   from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more
13   permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction,
14   we do not reach its application in this case."); *see also Crockett v. R.J. Reynolds Tobacco*
15   *Co.*, 436 F.3d 529, 533 n.5 (5th Cir. 2006).  The remaining circuits, including the Sixth
16   Circuit, have not yet addressed this issue.

17        District courts in the Sixth Circuit have come to different conclusions.  *Compare*
18   *Bird v. Carteret Mortg. Corp.*, No. 2:06-cv-00588, 2007 WL 894841, at *3-5 (S.D. Ohio
19   Mar. 22, 2007) (refusing to apply fraudulent misjoinder and remanding case), *with Asher*
20   *v. Minn. Mining & Mfg. Co.*, No. CV04-00522-KKC, 2005 WL 1593941, at *7-8 (E.D.
21   Ky. June 30, 2005) ("The Court agrees with the Eleventh Circuit's holding in *Tapscott*
22   that, just as this Court may find diversity jurisdiction exists where a plaintiff has no
23   possible cause of action against a nondiverse defendant, this Court may also find
24   diversity jurisdiction where diversity is destroyed only through misjoinder of parties.").
25   The Court need not decide whether the Sixth Circuit would recognize the doctrine of
26   fraudulent misjoinder.  Even assuming the doctrine applies, the Court finds that Dr.
27   Schmetterer was not fraudulently misjoined and that removal was therefore improper.
28   / / /

### 3.    Analysis.

In applying the doctrine of fraudulent misjoinder, the first issue is whether the federal or state standard for joinder should be used.  In some cases, a state's permissive joinder rule will be interpreted identically to Federal Rule of Civil Procedure 20, in which case the choice is not determinative.  Although the language differs only slightly, Ohio's permissive joinder rule is, in fact, broader than Rule 20.  *Compare* Fed. R. Civ. P. 20, *with* Ohio R. Civ. P. 20; *see also* 1 Baldwin's Ohio Prac. Civ. Prac. § 20:6 (2014) ("The second requirement of sentence one of [Ohio] Civ. R. 20(A) permits extremely broad joinder.  The 'transaction-occurrence' aspect of the requirement is broader even than the analogous Federal Rule 20(a).").[6]

Plaintiff suggests that the state joinder rule applies (N.D. Ohio Doc. 7 at 6-7), while Bard primarily cites the federal rule (Doc. 1323 at 8-11).  Although there is no consensus on which standard to employ, the majority view appears to be that state joinder rules should be utilized.  *See* E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 591 (2006) ("While a minority of district courts evaluate allegations of fraudulent misjoinder pursuant to the federal joinder rule, most evaluate such allegations by reference to the state joinder rule.").  This makes sense.  For purposes of fraudulent misjoinder, the Court must determine whether a diversity-defeating party was properly joined while the case resided in state court and was governed by state procedural rules.  If the party was properly joined there, complete diversity of citizenship is lacking here, and the Court cannot exercise subject matter jurisdiction.  Federal Rule of Civil Procedure 20 never applies in such a case.[7]  This also comports with how courts in the Northern District of Ohio

---

[6] Bard argues, without citation, that the same analysis would apply regardless of the rule selected because "Federal Rule of Civil Procedure 20(a) and Ohio Rule of Civil Procedure 20(a) have the same permissive joinder standard for defendants."  Doc. 1323 at 9 n.5.  The Court does not agree.

[7] The Supreme Court has instructed that a valid rule promulgated under the Rules Enabling Act is to be applied by the federal courts in diversity actions, *see Hanna v. Plumer*, 380 U.S. 460, 465 (1965), but this instruction applies to cases where diversity jurisdiction clearly exists.  In this case, the Court is asked to determine whether a pre-

conduct fraudulent joinder analysis.  *See NFC Acquisition, LLC v. Comerica Bank*, 640 F. Supp. 2d 964, 972 n.7 (N.D. Ohio 2009) ("When assessing a claim of fraudulent joinder, I rely on the Ohio Rules of Civil Procedure because even though the ultimate question is whether federal jurisdiction exists, the analysis relies on a determination of whether the defendant was a proper party to a state court action.").

Under Ohio's permissive joinder statute, "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences."  Ohio R. Civ. P. 20(a).  Such a joinder is proper only "if any question or law or fact common to all defendants will arise in the action."  *Id.*  Moreover, a "defendant need not be interested in . . . defending against all the relief demanded."  *Id.*

The Court finds instructive the case of *Geffen v. General Electric Co.*, 575 F. Supp. 2d 865 (N.D. Ohio 2008).  In that case, plaintiffs alleged products liability claims against the manufacturers and sellers of injectable gadolinium-based contrast agents.  *Id.* at 866-67.  Plaintiffs also alleged medical malpractice claims against the physicians who administered the injections.  *Id.* at 867.  Defendants removed, citing the doctrine of fraudulent misjoinder.  *Id.* 867-68.  Defendants argued that "the medical malpractice claims asserted against the Medical Defendants [were] improperly joined with the products-liability claims against the Manufacturer Defendants, because the medical malpractice claims are factually and legally distinct from the products-liability claims."  *Id.* at 869.  After surveying the fraudulent misjoinder case law, the court concluded that "[i]n the absence of controlling Sixth Circuit authority, and faced with conflicting case law even from within the Sixth Circuit, the Court finds the reasoning articulated in [cases declining to apply fraudulent misjoinder] to be more persuasive."  *Id.* at 871.  The court concluded that it lacked subject matter jurisdiction and remanded the case to state court.  *Id.* at 872.

removal joinder in state court was proper and sufficient to defeat diversity jurisdiction.

1        Other district court cases are in accord.  *See, e.g.*, *Bostic v. Glaxosmithkline, LLC*,
2    No. 15-cv-00084-ART, 2015 WL 8486181, at *1-2 (E.D. Ky. Dec. 9, 2015) ("The
3    Pharmaceutical Defendants argue that the Healthcare Defendants are fraudulently
4    misjoined. . . .  Moreover, even applying this questionable doctrine, the Healthcare
5    Defendants are not fraudulently misjoined."); *Williams v. Altman, McGuire, McClellan &*
6    *Crum, P.S.C.*, No. 12-cv-00131-ART, 2013 WL 28378, at *6 (E.D. Ky. Jan. 2, 2013)
7    ("[Plaintiff] alleges that she was injured by a mesh implant that the [nondiverse]
8    defendants placed in her and the removing defendants manufactured and marketed.  None
9    of the defendants can say that they have no real connection with the controversy.")
10   (quotation marks, alteration, and citation omitted); *see also Lopez v. Pfeffer*, No. CV13-
11   03341-NC, 2013 WL 5367723, at *4-5 (N.D. Cal. Sept. 25, 2013); *N.C. ex rel. Jones v.*
12   *Pfizer, Inc.*, No. C-12-00531-WHA, 2012 WL 1029518, at *1-4 (N.D. Cal. Mar. 26,
13   2012); *Watson v. Gish*, No. C-10-03770-SBA, 2011 WL 2160924, at *3-4 (N.D. Cal.
14   June 1, 2011).

15       With one exception, district courts in the Sixth Circuit have rejected allegations of
16   fraudulent misjoinder.  *See Bostic*, 2015 WL 8486181, at *1-2 (rejecting allegations of
17   fraudulent misjoinder); *Cent. Bank v. Jerrolds*, No. 14-1163, 2015 WL 1486368, at *2-4
18   (W.D. Tenn. Mar. 31, 2015) (same); *Williams*, 2013 WL 28378, at *6 (same); *Cent. Ohio*
19   *Gaming Ventures, LLC v. Goodman*, No. 2:11-cv-00223, 2011 WL 1981185, at *6-9
20   (S.D. Ohio May 20, 2011) (same); *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790
21   F. Supp. 2d 590, 599-600 (E.D. Ky. 2011) (same); *Bird*, 2007 WL 894841, at *3-5
22   (same); *but see Asher*, 2005 WL 1593941, at *7-9 (finding that plaintiff fraudulently
23   misjoined defendants).[8]

24
25       [8] The Court located several other district court cases within the Sixth Circuit that
     applied fraudulent misjoinder, but they were applying the law of the Eleventh Circuit,
26   which created the doctrine.  *See Harper v. DePuy Orthopaedics, Inc.*, No. 1:11-dp-20522,
     2011 WL 3049082 (N.D. Ohio July 25, 2011); *Milner v. DePuy Orthopaedics, Inc.*, No.
27   3:11-dp-20529, 2011 WL 3102320 (N.D. Ohio July 25, 2011); *Patterson v. DePuy*
     *Orthopaedics, Inc.*, No. 1:11-dp-20521, 2011 WL 3047794 (N.D. Ohio July 25, 2011);
28   *Slay v. DePuy Orthopaedics, Inc.*, No. 1:11-dp-20524, 2011 WL 3052531 (N.D. Ohio
     July 25, 2011); *Taylor v. DePuy Orthopaedics, Inc.*, No. 1:22-dp-20523, 2011 WL
     3055295 (N.D. Ohio July 25, 2011).

The Court concludes that Plaintiff had a reasonable, non-frivolous basis for joining Dr. Schmetterer.  Plaintiff's claims center on the Bard Filters implanted in his inferior vena cava.  The Filters were manufactured by Bard and implanted by Dr. Schmetterer. Plaintiff asserts the following claims: (1) several strict products liability claims against Bard; (2) failure to recall or retrofit against Bard; (3) misrepresentation against Bard; (4) fraudulent misrepresentation against Bard; (5) fraudulent concealment against Bard; (6) violation of Ohio state law prohibiting consumer fraud and deceptive trade practices against Bard; and (7) medical negligence against Dr. Schmetterer.  *See* N.D. Ohio Doc. 1-2 at 34-48.  Although none of the claims involve both Bard and Dr. Schmetterer, Plaintiff's allegations establish a relationship between the Defendants.  Plaintiff's medical negligence claim alleges that Dr. Schmetterer recommended that the Bard Filters be implanted in Plaintiff.  *Id.* at 47, ¶ 215.  Plaintiff alleges that Dr. Schmetterer was negligent in "failing to offer the Plaintiff other reasonable, effective, better and safe forms of treatment."  *Id.* at 47-48, ¶ 216.  In his fraudulent misrepresentation claim, for example, Plaintiff alleges that Bard intentionally misrepresented to Plaintiff and his healthcare providers the Filters' safety, efficacy, rate of failure, pre-market testing, approved uses, and retrievability.  *Id.* at 40-41, ¶ 167.  Plaintiff also alleges that Bard misrepresented the fact that its filters "have a statistically significant higher rate of failure and injury than do other comparable [inferior vena cava] filters."  *Id.* at 42, ¶ 175.  If this claim is proven, it undermines Plaintiff's medical negligence claim against Dr. Schmetterer; if it is not proven, it strengthens the medical negligence claim.

Dr. Schmetterer was properly joined under Ohio's permissive joinder statute. Plaintiff alleges alternative liability between Bard and Dr. Schmetterer arising from implantation of the Bard filters.  This satisfies Ohio Rule 20, which permits joinder of "alternative" rights to relief arising from a "series of transactions or occurrences."  Ohio R. Civ. P. 20(a).  Plaintiff also alleges successive torts committed by Bard and Dr. Schmetterer, which also satisfies the Ohio rule.  *See Williams v. Gragston*, 455 N.E.2d 1075, 1077 (Ohio Ct. App. 1982) ("Successive torts, separated and unrelated in time,

1   place or source, constitute a 'series of occurrences' within the meaning of [Ohio R. Civ.
2   P. 20(a)].").  The claims also involve common questions of fact, such as whether there
3   was a design defect, whether Bard knew about the defect, whether Bard misrepresented
4   its filters' safety to the public, including Dr. Schmetterer, how the filters failed, and
5   Plaintiff's injury and damages.  This satisfies the second criterion set forth in Rule 20(a).
6   *See also Williams*, 455 N.E.2d at 1077 (finding that "causal contribution of each
7   defendant to the plaintiff's injuries was a question of fact common to all parties more
8   effectively determinable in a single action before one trier of fact").[9]  With this claim
9   sufficient to support the permissive joinder of Dr. Schmetterer, there is no need to
10   analyze any other claims.  Ohio R. Civ. P. 20(a) ("A plaintiff or defendant need not be
11   interested in obtaining or defending against all the relief demanded.").

12         This case is unlike those where fraudulent misjoinder has been applied.   In
13   *Tapscott*, for example, the claims involved violation of the same state statute, but differed
14   in virtually every other respect.  The two classes of claims had no facts in common; one
15   involved automobile service contracts, the other retail goods service contracts; and the
16   two classes had no parties in common.  The court concluded that joining the claims
17   against the retail goods class with those against the automobile class was done solely to
18   prevent the retail goods class from being removed to federal court.  Given Plaintiff's
19   compliance with Ohio Rule of Civil Procedure 20(a), the Court does not find the same
20   situation here.[10]

21         Even if this Court were not completely satisfied that Dr. Schmetterer was properly

22

23         [9] Bard notes that types of evidence required to prove Plaintiff's products liability
claims will differ from that required to prove his medical negligence claim.  Doc. 1323 at
10-11.  Bard may be correct, but this is not the proper inquiry.  The right inquiry is
whether these claims involve "*any* question of law or fact common to all defendants."
Ohio R. Civ. P. 20(a) (emphasis added).  Plaintiff has cleared this low threshold.

26         [10] Bard's Master Answer also contains a number of affirmative defenses which
suggest that Dr. Schmetterer is a proper party in this case.  *See* Doc. 366 at 44, ¶ 2
(negligence of others as sole proximate cause); ¶ 6 (damages caused by others); 45, ¶ 11
(others caused or contributed damages); 46, ¶ 18 (physicians acted as sophisticated
purchasers); ¶ 19 (independent knowledge of risks by others was intervening and
superseding cause); 47, ¶ 25 (contributory or comparative negligence); 51, ¶ 52 (failure to
join necessary parties).

joined, finding fraudulent misjoinder would still be inappropriate.  First, the Court could remand so that Plaintiff could amend his complaint.  This would be consistent with Ohio law.  *See Christ v. Konski*, 910 N.E.2d 520, 522, ¶ 14 (Ohio Ct. App. 2009) ("It is well established that motions to amend are treated with favor and deference, given the requisite liberal application of the relevant rules.  Motions to amend should be denied only in extreme circumstances, such as evidence of bad faith, undue delay, or undue prejudice.") (citing *Turner v. Cent. Local School Dist.*, 706 N.E.2d 1261, 1264 (Ohio 1999)).  Second, where it is unclear whether Dr. Schmetterer was properly joined, remand would still be appropriate to give effect to the strong presumption against removal, which requires that all doubts be resolved against the exercise of federal court jurisdiction.  *Coyne*, 183 F.3d at 493 (citation omitted); *see* 28 U.S.C. § 1447(c).

Finally, the Court must consider the proper remedy.  Bard asks the Court to sever and remand Plaintiff's claims against Dr. Schmetterer under Federal Rule of Civil Procedure 21.  Doc. 1323 at 4-8.  Courts can sever and remand claims against non-diverse defendants when the test for permissive joinder has not been satisfied, i.e., when fraudulent misjoinder has occurred.  *See Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319, 321 (E.D. Mich. 2012) ("'If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance.'") (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)).  A court's use of Federal Rule of Civil Procedure 21 presumes that the court has subject matter jurisdiction over the claims.

As Bard points out, some district courts have opted to sever and remand claims against a nondiverse party to perfect diversity jurisdiction.  Doc. 1323 at 5-8 (citing *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015)).  The Court cannot conclude that such an approach is proper where no fraudulent misjoinder has been found and all doubts are to be resolved against the exercise of federal court jurisdiction.  *Coyne*, 183 F.3d at 493 (citation omitted); *see* 28 U.S.C. § 1447(c).

The proper remedy is to remand the case to the Mahoning County Court of Common Pleas.

**B.     Bard's Motion to Sever.**

Prior to removal, Bard filed a motion to sever and remand Plaintiff's claims against Dr. Schmetterer.   *See* N.D. Ohio Docs. 4-5.   Because there is no complete diversity between the parties, the Court lacks subject matter jurisdiction to resolve Bard's motion to sever.

**IT IS ORDERED:**

1.      Plaintiff's motion to remand (N.D. Ohio Doc. 7) is **granted**.

2.      The Clerk of the Court shall remand this case to the Mahoning County Court of Common Pleas.

Dated this 23rd day of May, 2016.

David G. Campbell
United States District Judge